# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TED A. MCCRACKEN : | CIVIL ACTION |
|     Plaintiff, : | |
|     : | |
| v. : | No. 08-2932 |
|     : | |
| EXXON/MOBIL COMPANY et al. : | |
|     Defendants. : | |

**Goldberg, J.**                                                                                                        November 12, 2009

## **MEMORANDUM OPINION**

This case stems from Plaintiff's claim that he contracted thyroid cancer while driving vehicles fueled by Defendants' products. Plaintiff has sued a multitude of gasoline/oil companies. This is not the first time Plaintiff has raised these claims in this Court.[1]

Defendants have filed Motions to Dismiss, which generally assert that Plaintiff's claims should be dismissed because the Court lacks subject matter jurisdiction, the complaint fails to state a claim, and the claims are barred by the applicable statute of limitations (doc. nos. 7, 8, 12, 16 and

---

[1] See McCracken v. ConocoPhillips Co., 2009 WL 1911764 (E.D. Pa. July 9, 2009) McCracken v. Damiler Chrystler Motors Co. LLC, 2009 WL 1213481 (E.D. Pa May 4, 2009); McCracken v. Ford Motor Co., 588 F.Supp.2d 635 (E.D. Pa. Nov. 3, 2008); McCracken v. Exelon Corp., Civil Action No. 07-CV-2038 (E.D.Pa.).

1

55).[2] We will also consider Plaintiff's four (4) Motions for Leave to File An Amended Complaint (doc. nos. 29, 41, 44 and 48), all of which propose the same changes, and request that Defendant Sunoco, a Pennsylvania corporation, be removed from the case so that complete diversity is established under Fed. R. Civ. P. 12(b)(1).[3]

After examining the individual counts in detail, we will grant Defendants' Motions to Dismiss. Additionally, because the proposed amendments do not cure the Complaint's deficiencies, it would be futile to allow Plaintiff leave to amend his Complaint. Consequently, Plaintiff's Motions to Amend are denied.

**I. BACKGROUND**

Plaintiff, Ted A. McCracken, filed this pro se civil product liability complaint on June 26, 2008 against gasoline manufacturers, Exxon Mobil Corporation ("ExxonMobil"), Sun Oil Company ("Sunoco"), Shell Oil Company, Texaco, British Petroleum, ConocoPhilips Company, Hess Oil Company, John DOE (Vice-President of Marketing, Exxon/Mobil Company, his predecessor and

---

[2]Due to alleged service issues, one of the Defendants, ConocoPhilips Company, did not file its Motion to Dismiss (doc. no. 55) until October 30, 2009. As ConocoPhilips' motion presents the exact same arguments as presented in the four other Motions to Dismiss and because Plaintiff never moved for default, we will exercise our discretion and also consider ConocoPhilips' motion.

[3]As originally filed, because both Plaintiff and Defendant Sunoco are Pennsylvania residents, there is not complete diversity between Plaintiff and Defendants. Consequently, this court would not have subject matter jurisdiction over the case.

successor), John DOE 1 (Vice-President, Engineering, Exxon/Mobil Company, his predecessor and successor)[4] (collectively, "defendants").[5] As we understand Plaintiff's allegations, he claims that Defendants sold him gasoline, which he used to fuel his vehicles, allowing them to travel at increased speeds, and exposing him to heightened levels of radiation causing him to contract thyroid cancer. (Compl. ¶¶ 23-25.) Plaintiff has sued Defendants based on theories of (1) strict liability in tort, (2) failure to warn, (3) attractive nuisance, (4) breach of warranty of merchantability, (5) ultrahazardous activity, (6) negligence, (7) omissions and false representations of merchantability, (8) defective design, (9) intentional infliction of emotional distress, (10) assault and battery, (11) market share liability, (12) concerted action liability, (13) alternative liability and (14) false misrepresentation, fraudulent suppression, and fraudulent concealment.

## II. STANDARDS OF REVIEW

**Dismissal under 12(b)(6)**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Fed. R. Civ. P. 8(a)(2) requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." According to the Supreme Court, the Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an

---

[4]ExxonMobil's Motion to Dismiss shall be considered submitted on behalf of all Exxon Defendants.

[5]We note that Plaintiff refers to other "Defendants" throughout his complaint: Ford Motor Company, William Clay Ford (CEO of Ford), John DOE (Vice-President of Marketing for Ford), John DOE 1 (Chief Engineer for Vehicle Safety at Ford), Chapman Ford (Dealer of Ford motor vehicles), WAWA (dealer of gasoline), Arco, Union Carbide (Compl. ¶¶ 13-17, 74). However, these persons/entities are not "Defendants" in this case as Plaintiff never effected service on them. Additionally, Plaintiff has failed to effect service on two other named Defendants, Texaco and Hess Corporation. This issue is discussed infra.

unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). The Iqbal Court recently summarized the pleading standard established in Twombly:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Iqbal, 129 S.Ct. at 1949 (citations omitted).

The Iqbal Court articulated two principles that underlie Twombly's holding. First, a court must accept as true all of the factual allegations made in a pleading, but not the legal conclusions. Id. Second, only a complaint that states a "plausible claim for relief survives a motion to dismiss." Id. at 1950. Determining plausibility is a "context specific task." Id. In short, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." Id. (citations omitted). The Third Circuit has found that in light of Twombly, it is no longer sufficient to make an unsupported statement asserting an entitlement to relief; instead a complaint must state a claim and the grounds supporting the claim. Phillips v. County of Allegheny, 515 F.3d 224, 233-34 (3d Cir. 2008) (citing Twombly, 127 S.Ct. at 1969 n.8).

Pro se complaints such as the one under consideration here, are to be construed liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Bieros v. Nicola, 839 F.Supp. 332, 334 (E.D. Pa. 1993). However, even liberally construed complaints must have specific facts supporting their

4

allegations. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citing Kaylor v. Fields, 661 F.2d 1177, 1183 (8th Cir. 1981)). Pro se complaints may be dismissed for failure to state a claim under Rule 12(b)(6) "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." McDowell v. Delaware State Police, 88 F.3d 188, 189 (3d Cir. 1996) (citations omitted).

**Motion for Leave to Amend the Complaint**

Fed. R. Civ. P. 15 states that a party may amend its pleading once as a matter of course before being served with a responsive pleading. Fed. R. Civ. P. 15(a)(1). A party is entitled to amend after the filing of responsive pleadings "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A court is to "freely give leave when justice so requires." Id. The Third Circuit has taken a liberal approach to granting leave, noting that leave should be granted freely to ensure that a particular claim is decided on "the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 486-87 (3d Cir. 1990).

While the standard is a liberal one, a court is not required to grant leave to amend in every instance where it is sought. A district court has discretion in granting or denying the opportunity to amend the pleadings. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (noting that outright refusal to grant this request without any justification is "merely an abuse of discretion and inconsistent with the spirit of the Federal Rules") (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)). Grounds that would justify a denial of leave to amend include undue delay, dilatory motive, bad faith, prejudice, and futility. Id. (citations omitted); Covell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001) (The district court need not provide the litigant leave to amend where it would be futile to do so). Futility

5

means that the amended complaint would fail to state a claim upon which relief could be granted as determined by the standard of legal sufficiency that applies in Rule 12(b)(6) motions. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Hence, if the original claim is subject to dismissal under Rule 12(b)(6), "the leave to amend generally must be granted unless the amendment would not cure the deficiency." Shane, 213 F.3d at 115.

## III. DISCUSSION

### Statute of Limitations

As set forth above, Defendants seek dismissal of Plaintiff's Complaint because the Court lacks subject matter jurisdiction, the complaint fails to state a claim, and the claims raised are barred by the applicable statute of limitations.

All but Plaintiff's breach of warranty claims sound in personal injury. Pennsylvania has a two year statute of limitations for personal injury actions. 42 Pa.C.S. § 5524.[6] While Fed. R. Civ. P. 12(b) does not explicitly allow for the assertion of the statute of limitations defense in a motion to dismiss, there is an exception which permits such a defense to be raised in a 12(b)(6) motion where the allegations made on the face of the complaint show noncompliance with the limitations period. Schneller v. Prospect Park Nursing & Rehab. Center, 2009 WL 1838337 *6 (E.D. Pa. June 25, 2009) (citing Zankel v. Temple Univ., 245 Fed.Appx 196, 198 (3d Cir. 2007).

---

[6] The statute of limitations is two years for "Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter" 42 Pa.C.S. § 5524.

Generally, the statute of limitations for a tort action begins to accrue when the injury is sustained. Debeic v. Cabot Corp., 352 F.3d 117, 128-29 (3d Cir. 2003). However, under the "discovery rule" exception, which is applicable where a party, through no fault of his own, discovers an injury after the applicable statute of limitations period would have run, the limitations period begins to run when the plaintiff "discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Grant-Bergen v. Metro. Life Ins. Co., 2009 45441 * 8 (D.N.J. Oct. 5, 2009) (citing Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth., 539 F.3d 199, 209 (3d Cir. 2008)). It is Plaintiff's duty "to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." Darbouze v. Chevron Corp., 1998 WL 512941 *12 (E.D. Pa. Aug. 19 1998) (quoting Hayward v. Med. Ctr. of Beaver County, 608 A.2d 1040, 1042 (Pa. 1992). The burden rests on the party claiming the discovery rule exception to demonstrate that it applies. Debeic, 352 F.3d at 129. While the issue of diligence is usually one for a jury, "where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." Cochran v. GAF Corp., 666 A.2d 245, 248 (Pa. 1995).

In Cochran, the plaintiff was diagnosed with lung cancer. Id. at 247. Years after diagnosis, plaintiff learned that the cancer was a result of asbestos exposure and filed suit. The Pennsylvania Supreme Court held the plaintiff had been put on notice as of the day of diagnosis and the onus was then on plaintiff to investigate. Id. at 248-49. The court, therefore, held that the statute of limitations began running when Plaintiff was diagnosed, not when she later learned of the cause of her diagnosis. Id.

7

Here, Plaintiff alleges that he was diagnosed with thyroid cancer on June 21, 2005. As was determined in McCracken v. Ford Motor Co., doc. no. 32 "Explanation and Order," in 07-CV-2018 (E.D. Pa. Aug. 13, 2008), (which addresses the identical factual scenario), Plaintiff was put on notice no later than that date of diagnosis.[7] The two year statute of limitations period, therefore, expired on June 21, 2007. Plaintiff filed his Complaint on June 26, 2008, and makes no assertion that the limitation period should be tolled beyond the date of diagnosis.[8] Consequently, all of Plaintiff's personal injury claims are barred by the statute of limitations and are dismissed.[9]

---

[7] In McCracken v. Ford Motor Co., 588 F.Supp.2d at 638, Plaintiff similarly alleged that he was diagnosed with thyroid cancer on June 21, 2005 as a result of being exposed to radiation levels that are increased inside vehicles traveling at speeds of 65-70 mph. (We note that in his original complaint in that suit, McCracken alleged that he was diagnosed on May 19, 2005, but later changed the date to June 21, 2005, the same date alleged in the complaint before this Court). While the claims against the original Defendant named in the May 17, 2007 complaint were timely filed and not dismissed based on account of timeliness, claims against dealer defendants that were added in an amended complaint filed January 6, 2008, were dismissed as untimely for the same reasons as set forth here. Id. at 639 (citing doc. no. 32, "Explanation and Order," in 07-CV-2018).

[8] Plaintiff's sole response to Defendants' allegation of untimely filing is the incorrect assertion that Pennsylvania has a discovery rule that allows Plaintiff to file a lawsuit three years after discovering the cause of the injury. (Pl.'s Mem. in Opposition to Def.'s (Exxon Mobil Corp.) Mot. to Dismiss, ¶ 6)

[9] These claims are: strict liability in tort, failure to warn, attractive nuisance, ultrahazardous activity, negligence, defective design, intentional infliction of emotional distress, assault and battery, market share liability, concerted action liability, alternative liability, and false misrepresentation, fraudulent suppression, and fraudulent concealment.

**Breach of Warranty of Merchantability**

Plaintiff's sole remaining claims allege breach of express and implied warranties of merchantability.[10] The statue of limitations for a breach of warranty is four years. 13 Pa.C.S.A. §§ 2725(a), (b). The period begins at the time of tender or sale of the allegedly defective product. Id. Plaintiff alleges that he purchased the Defendants' gasoline from around October 1997 until the date he was diagnosed with thyroid cancer on June 21, 2005. (Compl. ¶ 20.) Reading the facts in the light most favorable to the Plaintiff, the statute of limitations on this claim would begin to run on June 21, 2005, making these claims timely. We will, therefore, address these claims on the merits.[11]

Plaintiff's breach of express and implied warranty of merchantability claims essentially allege that there was an "express/implied warranty of merchantability that the fuel (gasoline) used in conjunction with customarily marketed and sold gas-powered (unleaded) motor-vehicles(s) that gasoline was a safe, non-hazardous, and able to be operated without causing catastrophic injury." (Compl. ¶ 32.)

---

[10] Plaintiff also claims that there was an implied warranty of merchantability extended from the manufacturers of vehicles that warranted that their product was not hazardous, when, in fact, there was danger created by new technologies that allowed cars to move at higher speeds, creating exposure to higher level of cancer-causing radiation. (Compl. ¶ 32.) He alleges that three of his most recently purchased vehicles have "fuel injection which provides more power" and this "creates an implied warranty of merchantability that the gasoline sold to power automobiles/light duty trucks is safe with increased capability of a quick acceleration and higher speeds." Id. This claim is not addressed by this Court as any warranty created by the car manufacturer does not extend to the gas companies, which are the only Defendants in this suit.

[11] Plaintiff labels one section of his Complaint "Omissions and false representations of merchantability." The allegations, made against both car and gasoline manufacturers, are the same as those made under breach of implied warranty of merchantability. We will, therefore, consider this claim as a breach of implied warranty of merchantability claim. (Compl. ¶¶ 44-49.)

**Express Warranties**

Under Pennsylvania law, express warranties by the seller are created by:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description;

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

13 Pa. C.S.A. § 2313(a).

Plaintiff has made no factual allegations either in his complaint or his proposed amended complaint, which would establish that an express warranty existed. Pro se complaints may be dismissed for failure to state a claim under Rule 12(b)(6) "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." McDowell, 88 F.3d at 189 (citations omitted). Having failed to allege any facts to support his claim of breach of express warranty of merchantability, this claim would not survive a motion to dismiss even if amended. Consequently, this claim is also dismissed.

**Implied Warranties**

Under Pennsylvania law, "[u]nless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 13 Pa. C.S.A. § 2314(a). Assuming that there was an implied warranty of merchantability, in order for the warranty to have been breached, "the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." In re Toshiba America HD DVD Mktg. & Sales Practice Litig., 2009 WL 2940081 *16 (D.N.J. Sept. 11, 2009) (citing Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992) (Under

Pennsylvania law, to establish a breach of either the implied warranty of merchantability or the warranty of fitness for a particular purpose, "plaintiffs must show that the equipment they purchased from the defendant was defective."). Thus, in order to carry his burden, Plaintiff is required to show: "(1) that the product malfunctioned; (2) that plaintiffs used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." Altronics, 957 F.2d at 1105.

While the Court will assume that Plaintiff was using Defendants' product as intended by the manufacturer, Plaintiff has not shown, nor does he ever assert, that the product malfunctioned. To malfunction is "to function imperfectly or badly: fail to operate normally." (Merriam-Webster's Online Dictionary, http://www.aolsvc.merriam-webster.aol.com/dictionary). Plaintiff does not allege that the gasoline failed to operate normally, that is, failed to power his vehicles. Plaintiff appears to be asserting that when he bought gasoline, there was an implied warranty that the gasoline would allow him to drive his car safely and that warranty was breached because when he drove his car, there was higher level of radiation in the air. However, he never proposes that it was the gasoline that "malfunctioned" and caused a higher level of radiation. Consequently, Plaintiff has neither alleged nor shown that the product itself malfunctioned or is defective.[12]

---

[12]

In In re Toshiba, 2009 WL 2940081 at * 16, plaintiffs claimed that defendants made an implied warranty of merchantability that Toshiba would continue to support a certain DVD format. Plaintiffs alleged that by announcing that it would no longer support that format, Toshiba had breached the warranty. The court found the claim failed because plaintiffs did not allege that the DVD players at issue were defective at the time of purchase or at the time of litigation, nor did they allege that they were not fit for their ordinary use, which was to play DVDs. Id. The court, therefore, determined the since plaintiffs had not alleged the product did not do what it was supposed to do - play DVDs - they had failed to state a claim for breach of implied warranty. Id. at * 17. Likewise, here, Plaintiff has not alleged that the product did not do what it was supposed to do and, therefore, has failed to state a claim for breach of implied warranty.

The third element of a breach of implied warranty claim is "absence of other reasonable secondary causes." Plaintiff asserts that "[i]nitially it must be realized that thyroid cancer occurs from the cumulative effects of exposure to radiation." (Pl.'s Mem. in Opp. to Def.'s (Exxon Mobil Corp.) Mot. to Dismiss, ¶ 4 (doc. no. 25).) He further alleges that "the only known cause of thyroid cancer is radiation exposure of the type and quantity generated, propelled and released at the numerous U.S. nuclear facilities throughout the country." (Compl. ¶ 23.) The court is then asked to conclude that, assuming his allegations that his cancer was caused by radiation and that the levels of radiation are higher when he is driving his vehicle at high speeds are true, it was the higher levels of radiation *in his car* that were responsible for his illness. (Compl. ¶¶ 23-25.) The only other possible cause of contracting cancer posited by Plaintiff is the wholly unsubstantiated claim that Defendants also mine uranium and "uranium caused plaintiff's subsequent injuries." (Compl. ¶¶ 70-82). Aside from the brief mention of uranium, Plaintiff does not address the possibility of another cause for contracting thyroid cancer and, therefore, never attempts to discredit them.

While Plaintiff need not prove his case at this point, this claim fails the Fed. R. Civ. P. 8(a)(2) pleading requirement, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Therefore, even assuming all of the allegations are true, Plaintiff does not raise a claim of entitlement to relief and this claim is dismissed.

**Plaintiff's Motions to Amend Complaint**

Finally, the proposed amendments set forth in the Amended Complaint, which essentially attempt to remove a Defendant, would not cure the deficiencies in the remaining breach of warranty

of merchantability claims, making amendment futile and the claim subject to dismissal under 12(b)(6). Even if the court allowed Plaintiff to amend his complaint, it would not survive a Motion to Dismiss.

**Lack of Service - Defendants' Texaco and Hess Oil Company**

Under Fed. R. Civ. P. 4, when a plaintiff is granted in forma pauperis status, the court must order that service be made by a U.S. Marshal. Plaintiff was granted such status and the Marshals were ordered to serve the named defendants (doc. no. 2). Due to insufficiencies in the information provided by Plaintiff, the Marshal's attempts to serve the Complaint upon Texaco and Hess Oil Company were unsuccessful and the Marshals filed returns of service unexecuted.[13] Plaintiff has taken no further action. Allowing the Plaintiff an extension of time under Fed. R. Civ. P. 4(m) to attempt to re-serve these parties would be futile as the statute of limitations period has run on all but the breach of warranty of merchantability claims. Thus, as to the un-served parties, Texaco and Hess Oil Company, all of the allegations set forth in the Complaint, except for the breach of warranty of merchantability claims, are dismissed. The remainder of the complaint is dismissed without prejudice under Fed. R. Civ. P. 4(m) and 41(b) for failure to effect service.

Our Order follows.

---

[13] US Marshals were directed by Plaintiff to serve "Texaco Inc.c/o J.W. Kinnear, President at 1111 Bagby Street, Houston, TX 77210." The U.S. Marshal's "Process Receipt and Return" states: "Attempt to serve made at address provided. Texaco is no longer located at that location. Since merger with Chevron in late 2001, Texaco relocated to 1500 Louisiana, Houston, Texas. Security personnel at this location advised that Mr. JW Kinnear is no longer with Texaco Inc., therefore this complaint/summons is being returned unexecuted." The Marshals were directed to serve "Hess Corporation c/o CT Corporation System at 1635 Market Street, Philadelphia." The "Process and Return" states: "CT Corp does not represent Hess Oil Co. listed in complaint. They represent Hess Corporation. Refused Service." (Doc. no. 53.)